# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

YONNETTE DAVIS, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

SCHWAN'S CONSUMER BRANDS, INC.,

Defendant

1:23-cv-08866

Class Action Complaint

Jury Trial Demanded

Plaintiff Yonnette Davis ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Schwan's Consumer Brands, Inc.  ("Defendant") sells frozen apple pie with a crumble top ("Dutch Apple Pie") promoted with a "Flaky Crust" "Made With Real Butter," next to two pats of butter under the Mrs. Smith's brand ("Product").




## I.   CONSUMERS VALUE BUTTER OVER BUTTER ALTERNATIVES

2.     Since the dawn of recorded history, humans have consumed butter, made from milk and cream.

3.     For the past 150 years, butter has competed against yellow-colored blends of vegetable oils, like canola oil, cottonseed oil, palm oil, and soybean oil.

4.     According to the USDA and market researchers, the last ten years have seen significant changes in consumer demand for butter and vegetable oils.

5.     Americans' per capita butter consumption reached six pounds, the highest level in 50 years, while vegetable oil consumption at three pounds is their lowest level since the 1940s.

6.     There are several reasons for these changes.

7.     First, according to consumer research firm Mintel, consumers are choosing foods with butter over those containing vegetable oils due to the former's "natural appeal" and a desire for minimally processed ingredients.

8.     Butter is made by churning cow's milk and contains only natural ingredients of either milk or cream and salt.

9.     In contrast, vegetable oils are ultra-processed foods ("UPF"), undergoing hydrogenation and interesterification, in the presence of chemical catalysts such as nickel and cadmium.

10.     Second, research company Innova observed how "growing concern over

obesity has made many consumers aware of the healthful benefits of certain fats" like butter compared to vegetable oil alternatives.

11.   Butter contains heart healthier fats, while vegetable oils contain harmful trans fats.

12.   Butter also has calcium, protein, and vitamins A and D while vegetable oils have no comparable nutritional value because of the intense processing needed to render them palatable.

13.   Third, consumers prefer the taste of butter to vegetable oil substitutes.

14.   Butter is known for its creamy, smooth taste, and melts at mouth temperature.

15.   While vegetable oils are in theory heavily refined to provide a neutral taste, they are highly susceptible to oxidation and reversion back to their original "beany" and waxy taste.

16.   According to industry experts, "Advertising something as 'made with real butter' would have been unthinkable not that long ago…But today, many consumers are likely to choose real butter because, while higher in fat, it's cleaner than some substitutes" like vegetable oils.[1]

17.   Consumer research group Innova stated that "With butter back in vogue,

---

[1] Andy Nelson, IDDBA trends: top seven reasons consumers choose deli prepared meals, Supermarket Perimeter, July 24, 2023.

there is an opportunity to talk about the different types of fats and what is in food products."[2]

18.   The result is that "More consumers are choosing butter, and more butter claims like 'made with real butter' are being made on products."

19.   Recognizing these consumer trends, the Wisconsin Center for Dairy Research noted that "People would much rather see 'made with real butter' on a baked goods package than 'made with real hydrogenated fat.'"[3]

## II.   LABELING REQUIREMENTS

20.   In response to consumer outcry based on an unregulated environment where food labeling misled the public as to the amount and type of valued ingredients, the Pure Food and Drug Act of 1906 ("PFDA") set standards for truthful labeling.

21.   These requirements of honesty and transparency were enhanced by the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 et seq.; 21 C.F.R. Parts 100, 101 and 102.

22.   These laws were adopted by this State in their entirety through its Agriculture and Markets Law ("AGM") and accompanying regulations, so its

---

[2] Karen Nachay, Foreseeing Future Food Trends, Food Technology Magazine, 69.1, Institute of Food Technologists ("IFT"), Jan. 2015
[3] Rachel Duran, Trends in dairy ingredients kept clean, simple, Food Dive, Mar. 3, 2016.

citizens could make informed decisions about the foods they buy. AGM § 198 *et seq.*; 1 NYCRR § 259.1(a)(2)-(4) (adopting 21 C.F.R. Parts 100, 101 and 102).

23.   These rules are based on the premise that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as composition, taste and the use of certain types of ingredients.

24.   Federal and state regulations recognize that the labeling of foods can be misleading to consumers in numerous ways and provide a non-exhaustive list of examples.

25.   First, a food can be considered "misbranded" if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); AGM § 201(1).

26.   Second, the labeling of a food which contains two or more ingredients may be misleading because its name emphasizes one or more ingredients but not all ingredients, even though the names of all such ingredients are stated elsewhere in the labeling. 21 C.F.R. § 101.18(b); 1 NYCRR § 259.1(a)(3).

27.   Third, ingredients are generally required to be listed in order of predominance by weight. 21 C.F.R. § 101.4(a)(1); 1 NYCRR § 259.1(a)(3).

28.   Fourth, a food's common or usual must accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients. 21 C.F.R. § 102.5; 1 NYCRR § 259.1(a)(4).

29.   This includes not overemphasizing the presence of any characterizing ingredients or components, when the proportion of such ingredient or component has a material bearing on price or consumer acceptance or when the labeling or appearance creates an erroneous impression that these are present in amounts greater than is actually the case. 21 C.F.R. § 102.5; 1 NYCRR § 259.1(a)(4).

## III.  BUTTER'S ROLE IN PIE CRUST

30.   Consumers generally consider a pie's crust as their favorite part of a pie.

31.   The most important attribute of a pie crust is its flakiness, with numerous layers of dough.

32.   A pie crust contains flour, salt, water, and shortening, a solid type of fat.

33.   The amount and type of fat used is significant because it has the greatest impact on quality, flavor and texture.

34.   Fat ingredients tenderize pie crust by coating flour proteins in the dough and physically interfering with the development of gluten.

35.   Butter is known for producing a flaky pie crust in part because of its water content.

36.   When butter is cut into dough, it creates tiny beads or flakes, preventing excess water from absorbing into the flour.

37.   When the pie is heated and the butter melts, it creates air pockets and

steam through releasing its water content, separating the dough into layers.[4]

38.   Because one part of water creates 1,600 parts of steam, butter's high water content compared to vegetable oil shortenings produces an ideal flaky crust.

## IV.  "MADE WITH REAL BUTTER" MISLEADING

39.   Though the front label prominently promotes a "Flaky Crust" "Made With Real Butter," with two pats of butter, across a blue ribbon, emblematic of state fairs of lore, the relative and absolute amount of butter in the crust is negligible or de minimis.



**INGREDIENTS:**

**FILLING:** APPLES, WATER, SUGAR, MODIFIED FOOD STARCH, CORN SYRUP, BROWN SUGAR, SALT, SPICE, XANTHAN GUM.

**CRUST:** WHEAT FLOUR, SHORTENING BUTTER BLEND (PALM OIL, BUTTER [CREAM, SALT]), PALM OIL, WATER, SOYBEAN OIL, SALT, DEXTROSE, YEAST, MONO- AND DIGLYCERIDES.

**STREUSEL:** WHEAT FLOUR, BROWN SUGAR, PALM OIL, SUGAR, SOYBEAN OIL, SILICON DIOXIDE, SALT, DEXTROSE, MONO- AND DIGLYCERIDES.

**CRUST:** WHEAT FLOUR, SHORTENING BUTTER BLEND (PALM OIL, BUTTER [CREAM, SALT]), PALM OIL, WATER, SOYBEAN OIL, SALT, DEXTROSE, YEAST, MONO- AND DIGLYCERIDES.

---

[4] Butter Flaky Pie Crust, All Recipes.

40.   First, purchasers buying a pie touting its "flaky crust" as "Made With Real Butter" next to two pats of butter will expect butter to be the predominant or exclusive shortening ingredient.

41.   However, butter is not the main or exclusive shortening ingredient used in the crust, because it is listed after "Palm Oil" as part of an ingredient called "Shortening Butter Blend."

42.   Second, "while many of us have heard the advice to always look at the ingredient list, especially the first five ingredients, to assess the quality of the foods we are purchasing," Defendant's misleading and unlawful "ingredient combining" prevents consumers from learning standard information about the Product's ingredients and their relative amounts.[5]

43.   Contrary to what consumers would read if they viewed the ingredients, butter is not the Product's third most predominant ingredient even it appears listed third, after "Palm Oil."

44.   By using "a completely made up term" like "Shortening Butter Blend," butter "float[s] to the top" of the ingredient list from where it would be if it was listed in the required way.

45.   Though multi-component ingredients are allowed by federal and state

---

[5] Elizabeth Klodas, MD FACC, Can you trust the ingredient panel on food packaging? Most doctors don't, Step One Foods, Apr. 20, 2021.

regulations, this is subject to certain exceptions not applicable here.

46.   The first exception is where an ingredient contains two or more component ingredients and has a common or usual name or a standard of identity. 21 C.F.R. § 101.4(b)(2).

47.   This does not apply because there is no established common or usual name or standard of identity for what Defendant identifies as "Shortening Butter Blend."

48.   This generally applies to common ingredients consumers are familiar with, such as chocolate and macaroni.

49.   "Shortening Butter Blend" is not an ingredient any consumers are familiar with, because it is designed for big companies to use, so that consumers will wrongly think the food it is used in contains more butter than it does.

50.   The second exception is where a shortening ingredient is entirely from one source, such as vegetable, animal, or marine. 21 C.F.R. § 101.4(b)(14).

51.   This does not apply because "Shortening Butter Blend" is not entirely from one source, because it is a combination of vegetable and animal fats, it is not permitted to be listed as its own ingredient.

52.   This rule against "ingredient combining" makes sense, because the result of listing "Shortening Butter Blend" with its component ingredients causes consumers to expect butter to be present in greater absolute and relative amounts

than it is.

53.   If "Butter" were listed in accordance with federal and state regulations, it would not be near the top of the ingredient list, but near the bottom.

54.   This is based in part on analysis of the Nutrition Facts and ingredient list, based on the amount of nutrients and vitamins commonly found in butter.

55.   Before Defendant used the ingredient of "Shortening Butter Blend" and promoted the Product as "Made with Real Butter" next to two pats of butter, it listed the crust's ingredients in the way required by law.

**INGREDIENTS:**
**FILLING:** APPLES, WATER, SUGAR, MODIFIED FOOD STARCH, CORN SYRUP, BROWN SUGAR, SALT, SPICE, XANTHAN GUM.
**CRUST:** WHEAT FLOUR, PALM OIL, WATER, BUTTER (CREAM, SALT), SOYBEAN OIL, SALT, DEXTROSE, YEAST.
**STREUSEL:** WHEAT FLOUR, SHORTENING (PALM OIL AND SOYBEAN OIL), BROWN SUGAR, SUGAR, SALT, DEXTROSE.

**INGREDIENTS**
**CRUST:** WHEAT FLOUR, PALM OIL, WATER, BUTTER (CREAM, SALT), SOYBEAN OIL, SALT, DEXTROSE, YEAST.

56.   The Nutrition Facts corresponding to this previous version of the ingredient list is almost identical to how it appears on the current version of the Product.

57.   The conclusion is that the ingredients did not materially change, only how they were presented to consumers.

58.   The amount of butter used in the crust is negligible or de minimis, in absolute and relative terms, compared to the vegetable oil shortenings of palm oil

and soybean oil.

59.   Butter costs more than vegetable oil shortenings, which is part of the reason Defendant can sell the Product at higher prices to consumers.

60.   By using predominantly vegetable oil shortenings instead of butter, the Product's crust lacks the quality, nutritional, and flaky attributes that consumers expect where it is promoted as "Made With Real Butter" next to two pats of butter.

61.   The labeling of the Product's crust as "Made With Real Butter" next to two pats of butter is misleading because it mostly consists of vegetable shortenings, but the labeling only suggests it is made with butter, even though the vegetable shortening ingredients are stated elsewhere on the labeling, albeit in a misleading way. 21 C.F.R. § 101.18(b); 1 NYCRR § 259.1(a)(3).

62.   Labeling the Product as a Dutch Apple Pie Made With Real Butter is a misleading common or usual name for two reasons. 21 C.F.R. § 102.5; 1 NYCRR § 259.1(a)(4).

63.   First, this overemphasizes the presence of the characterizing ingredient of butter, because the proportion of butter has a material bearing on its price and consumer acceptance.

64.   This is because consumers will pay more for a pie with a crust that is exclusively or predominantly from butter, because consumers prefer butter to non-butter alternatives.

65.   Second, the labeling and appearance creates the erroneous impression that the amount of butter in the crust is greater than is actually the case.

66.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $5.49 per pie, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

67.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

68.   The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

69.   Plaintiff is a citizen of New York.

70.   Defendant is a citizen of Georgia based on where it was incorporated.

71.   Defendant is a citizen of Minnesota based on its principal place of business.

72.   The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

73.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from

numerous retail locations, such as grocery stores, convenience stores, bodegas, gas stations, big box stores, drug stores and/or warehouse club stores.

74.   Defendant transacts business in New York, through the sale of the Product to consumers within New York from numerous retail locations, such as grocery stores, convenience stores, bodegas, gas stations, big box stores, drug stores and/or warehouse club stores.

75.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

76.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

77.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

78.   Venue is in this Court because Plaintiff is a resident of Bronx County.

79.   Venue is in this Court because a substantial part of the events or omissions giving rise to these claims occurred in Bronx County, which is where Plaintiff's causes of action accrued.

80.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in New York.

81.   Plaintiff became aware the labeling was false and misleading in Bronx County.

## PARTIES

82.   Plaintiff Yonnette Davis is a citizen of Bronx County, New York.

83.   Defendant Schwan's Consumer Brands, Inc., is a Georgia corporation with a principal place of business in Minnesota.

84.   Plaintiff purchased the Product between November 2019 and the present, at retail locations, such as grocery stores, convenience stores, bodegas, grocery stores like Stop and Shop and ShopRite, gas stations, big box stores, drug stores and/or warehouse club stores, in this State.

85.   Plaintiff is like most consumers who look to the front label of a product to learn what it is and its key features.

86.   Plaintiff is like most consumers who prefers butter to vegetable oil

shortening ingredients when consuming baked goods, for the reasons indicated above.

87.   Plaintiff read and relied on the front label statements of "Original Flaky Crust" and "Made With Real Butter" and pictures of the two pats of butter.

88.   Plaintiff expected butter to be the predominant or exclusive shortening ingredient in the crust.

89.   Plaintiff expected butter to be present in more than a negligible or de minimis amount relative to non-butter shortening ingredients.

90.   Plaintiff did not expect the predominant shortening ingredients to be from vegetable oils instead of butter.

91.   Based on her experience with how foods are labeled, she understood "Made With Real Butter" to indicate a significant absolute and relative amount of butter, because butter is a key and valued ingredient in a pie's crust.

92.   Plaintiff expected more than a butter taste, but enough butter to impart the characteristics of a butter crust such as the flakiness touted on the label, which she did not receive.

93.   Plaintiff bought the Product at or exceeding the above-referenced price.

94.   Plaintiff paid more for the Product than she would have had she known (1) it did not contain a significant absolute and relative amount of butter compared to other shortening ingredients, (2) it was not made predominantly or exclusively

with butter and/or (3) that butter was not present in more than a negligible amount.

95.   The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

96.   Plaintiff seeks to represent the following class:

> All persons in the State of New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged.

97.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

98.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

99.   Plaintiff is an adequate representative because her interests do not conflict with other members.

100.  No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

101.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

102. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

103. Plaintiff incorporates by reference paragraphs 1-65.

104. The purpose of the GBL is to protect consumers against unfair and deceptive practices.

105. The labeling of the Product violated the GBL because the front label and package statements and omissions of "Made With Real Butter" next to pictures of two fresh pats of butter, describing the crust as "flaky," a characteristic associated with butter, and identifying butter on the ingredient list in a misleading and unlawful manner through its inclusion in the multi-component ingredient of "shortening butter blend" was unfair and deceptive to consumers.

106. These statements and omissions caused Plaintiff to believe the Product's crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount.

107. Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that its crust (1) did not contain a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made

predominantly or exclusively with butter alternatives such as vegetable oils and/or (3) contained no more than a negligible or de minimis amount of butter.

108. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

109. Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

110. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

**COUNT II**
Agriculture and Markets Law ("AGM") § 198 *et seq.*,
Article 17, Adulteration, Packing, and Branding of Food and Food Products

111. Plaintiff incorporates by reference paragraphs 1-65.

112. Defendant violated AGM § 201(1) because the Product's labeling is false and misleading because "Made With Real Butter" causes consumers to expect it was the exclusive or predominant shortening ingredient and was present in more than a de minimis or negligible amount, when this was not true.

113. These actions were in violation of AGM § 199-a, which prohibits

misbranded food.

## COUNT III
Fraud

114. Plaintiff incorporates by reference paragraphs 1-65.

115. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

116. WHO: Defendant, Schwan's, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product through the representations the crust was "Made With Real Butter" next to pictures of two fresh pats of butter, describing the crust as "flaky," a characteristic associated with butter, identifying butter on the ingredient list in a misleading and unlawful manner through its inclusion in the multi-component ingredient of "shortening butter blend" and omissions that the crust's main shortening ingredient was not butter but vegetable oils.

117. These representations and omissions caused Plaintiff and consumers to expect the Product's crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount.

118. Defendant is aware of the representations and omissions it has made about the Product and that butter is not the main or predominant shortening

ingredient and that it is present in a negligible amount.

119. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing the Product's crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount.

120. Defendant omitted telling consumers the Product's crust was made mainly with non-butter shortening ingredients and that butter was present in a negligible or de minimis amount.

121. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

122. Defendant conducted or relied on research about consumer purchasing habits and knew a large majority consumers prefer butter to non-butter shortening ingredients like vegetable oils.

123. Defendant highlighted these attributes in selling the Product to consumers.

124. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

125. Yet, Defendant has represented and/or continues to represent that the

Product's crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount.

126. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and through the filing of this Complaint.

127. WHERE: Defendant's material misrepresentations and omissions, that the Product's crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

128. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that its crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount.

129. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before

purchasing the Product.

130. WHY: Defendant misrepresented that the Product's crust (1) contained a significant absolute and relative amount of butter compared to other shortening ingredients, (2) was made predominantly or exclusively with butter and/or (3) that butter was present in more than a negligible amount, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for foods with natural, minimally processed ingredients like butter instead of butter alternatives which were not natural and highly processed with chemicals.

131. Defendant intentionally concealed the negligible amount of butter from consumers who looked at the ingredients, because the use of "shortening butter blend" resulted in butter being closer to the beginning of the ingredient list, indicating more butter, than if it were truthfully listed separately, which would have placed towards the end of the ingredient list.

132. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

## COUNT III
### Unjust Enrichment

133. Plaintiff incorporates by reference paragraphs 1-36.

134. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class

members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   October 9, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*
*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates, P.C.

James Chung
Chung Law, P.C.
43-22 216th Street

23

Bayside, NY 11361
(718) 461-8808
jchung_77@msn.com